EQUIPMENT FINANCE CORPORATION v. EDWARD SCHEIDT; COMMISSIONER OF MOTOR VEHICLES, AND THE DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF NORTH CAROLINA.

(Filed 14 January, 1959.)

**1. Carriers § 2: Taxation § 30—**

Where the owner of trucks leases them to another corporation under an agreement requiring lessor to carry insurance and maintain the vehicles and giving lessee control over the operation of the trucks with right

to use same exclusively for the transportation and delivery of lessee's
goods, the lessor is not a contract carrier within the meaning of G.S.
20-38 (r) (1) and G.S. 20-38 (t), since the lessor merely leases its ve-
hicles and is not a carrier of any kind, and lessee is solely a private
carrier, and therefore lessor is not liable for additional assessment at
the "for hire" rates under the statute.

**2. Statutes § 5a—**

Whenever the meaning of a statute is in doubt, reference may be had
to the title and context as legislative declarations of the purpose of
the act.

**3. Same—**

Where the caption of a statute declares as its purpose the clarifica-
tion of a prior statute, the fact that the later statute for the first time
sets forth an exemption in specific terms does not perforce negate the
existence of such exemption under the prior statute, since to clarify
does not mean to add to or take from, but to make clear.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Mallard, J.,* 16 June Civil Term, 1958 of
WAKE.

This is an action instituted by the plaintiff to recover an assessment
of additional truck license taxes. Plaintiff paid taxes for the calendar
years 1950, 1951 and 1952 in the sum of $7,101.00, and in June 1952
the North Carolina Department of Motor Vehicles advised the plain-
tiff that an additional assessment at the "for hire" rates had been
made against it for the aforesaid years in the sum of $6,407.03, under
Section 20-38 (r) (1) and Section 20-38 (t) of the General Statutes
of North Carolina, upon the ground that during the years involved
the motor vehicles (trucks) of the plaintiff were used for transpor-
tation of property of another for hire. The additional assessment was
paid under protest, and in apt time this action was instituted for the
recovery thereof.

According to the stipulated facts, the plaintiff is a Delaware corpora-
tion, with its principal office and place of business in Chicago, Illinois,
and was authorized to own trucks and to lease the same. Plaintiff
corporation is an affiliate of the Curtiss Candy Company, an Illinois
corporation with its principal office in Chicago. Plaintiff corporation
was formed for the purpose of owning trucks to be leased to the parent
corporation, the owner of all its capital stock. The plaintiff did lease
to the Curtiss Candy Company, for a period of three years, certain
trucks to be used by the candy company to deliver its own products to
its customers. The terms of rental were set forth in the lease agree-
ment. The amount of rental depended on the size of the truck and its
use. The full rental applied if the truck was used during any part of
four days or more in any week, ending at midnight on Saturday of

each week; if used less than the above time, a lower rental, called "idle rate," was charged.

The plaintiff during the years involved was not a domesticated corporation in the State of North Carolina, carried on no operations and conducted no business, maintained no offices, had no employees, and had no property in this State except the trucks involved in this action which were brought into North Carolina by the lessee, Curtiss Candy Company, under the terms of its lease agreement. The plaintiff had no control over the operation of the leased trucks and no power to designate into what states they might be sent. The plaintiff was required to carry certain insurance on the trucks, to maintain them, to reimburse Curtiss Candy Company for repairs made to the trucks, and to pay the license fees.

The Curtiss Candy Company operated said trucks on the highways of North Carolina during the years involved solely for the transportation of its own property, and at no time did it transport within the State of North Carolina the property or goods of any other person, firm or corporation, nor did Curtiss Candy Company at any time hold itself out as a carrier of property for others or permit the trucks to be used in North Carolina by any other person, firm or corporation. Curtiss Candy Company as lessee of the trucks from the plaintiff was permitted to operate said trucks anywhere in the United States. The plaintiff leases no trucks to any person, firm or corporation except to the Curtiss Candy Company.

The cause came on for trial and was heard by his Honor Raymond B. Mallard, Judge Presiding, at the June Civil Term 1958 of the Superior Court of Wake County, without a jury, pursuant to stipulation of the parties. His Honor, being of the opinion that upon the agreed statement of facts the tax had been properly levied, rendered judgment for the defendants. The plaintiff appeals, assigning error.

*Attorney General Seawell, Lucius W. Pullen, Staff Attorney for the State.*

*D. Newton Farnell, Jr., for plaintiff.*

DENNY, J.  It is conceded that the only question for determination on this appeal is whether or not the plaintiff was a contract hauler or contract carrier within the meaning of G.S. 20-38 (r) (1) and G.S. 20-38 (t), and subject to contract hauler or contract carrier rates during the calendar years 1950, 1951 and 1952.

G.S. 20-38 (r) Property-Hauling Vehicles,—(1) Contract carrier vehicles, as of 1949, in pertinent part, read as follows: "Motor vehicles used for the transportation of property for hire, but not licensed as

common carrier of property vehicles under the provisions of sections 62-121.5 through 62-121.79: Provided, it shall not be construed to include the transportation of farm crops or products, including logs, bark, pulp and tannic acid wood delivered from farms and forests to the first or primary market, nor to perishable foods which are still owned by the grower while being delivered to the first or primary market, by an operator of not more than one truck or trailer for hire, nor to merchandise hauled for neighborhood farms incidentally and not as a regular business in going to and from farms and primary markets. Provided further, that the term "for hire" as used herein shall include every arrangement by which the owner of a motor vehicle uses, or permits such vehicle to be used, for the transportation of the property of another for compensation, subject to the exemptions aforesaid. * * *"

G.S. 20-88 (b) sets out the schedule of charges to be paid for the registration and licensing of trucks according to their classification and weight, the classifications being Private Hauler, Contract Hauler, and Franchise Hauler. The only amendment to this section since the date of its enactment was made by Chapter 819 of Session Laws of 1951, in which the words "contract carrier" were substituted in lieu of the words "contract hauler," and the words "common carrier of property" were substituted for the words "franchise hauler." However, these amendments have no legal bearing or effect on the question now before this Court.

In Chapter 831 of the 1953 Session Laws of North Carolina the General Assembly passed "AN ACT TO AMEND CHAPTER 20 OF THE GENERAL STATUTES TO REWRITE THE DEFINITION OF OWNER OF MOTOR VEHICLES AND CONTRACT CARRIER VEHICLES SO AS TO CLARIFY THE LICENSING PROCEDURE FOR LEASED VEHICLES." This Act listed as an exemption in various subsections, items set out in the text of the above statute and included in the list of exemptions the following: "(g) Vehicles which are leased for a term of one year or more to the same person, firm or corporation when used exclusively by such person, firm or corporation in transporting its own property."

G.S. 20-38 (t) in 1949 provided: "Owner. — A person who holds the legal title of a vehicle or, in the event a vehicle is subject to an agreement for conditional sale or lease thereof, with the right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the original vendee or lessee; or, in the event a mortgagor of a vehicle is entitled to possession, then such additional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this article; except that in all

such instances when the rent paid by the lessee includes charges for services of any nature and/or when the lease does not provide that title shall pass to the lessee upon payment of the rent stipulated, the lessor shall be regarded as the owner of such vehicle, and said vehicle shall be subject to such requirements of this article as are applicable to vehicles operated for compensation."

G.S. 62-121.7, paragraph (14), defines a contract carrier as follows: " 'Contract carrier by motor vehicle,' means any person which, under individual contracts or agreements, engaged in the transportation, other than transportation referred to in paragraph (13), by motor vehicle of property in intrastate commerce for compensation." Transportation referred to in paragraph (13) is that of a "common carrier by motor vehicle."

A private carrier or hauler is defined in paragraph (16) of G.S. 62-121.7, as follows: " 'Private carrier' means any person not included in definitions of common carrier or contract carrier, which transports in intrastate commerce in its own vehicle or vehicles property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or when such transportation is purely an incidental adjunct to some other established private business owned and operated by such person other than the transportation of property for compensation."

Certainly, under the above definitions, it would seem clear that if the Curtiss Candy Company had agreed to pay the license fees on the trucks leased from the plaintiff and operated in North Carolina, it could not be construed to be other than a private carrier or hauler. Its use of the trucks was purely an incidental adjunct to its established private business owned and operated by such corporation other than for the transportation of property for compensation.

In *Interstate Commerce Com'n. v. Woodall Food Prod. Co.* (U.S. C.A. 5th Cir.), 207 F 2d 517, the defendant was engaged in buying and selling poultry, in which business it used leased trucks. The Court held that within the meaning of the Motor Carrier Act, the defendant was a "private carrier" and not a "contract" or "common" carrier. In this connection it will be noted that the provisions contained in 49 U.S.C.A., section 303 (a) (17), cited by the Court in the above case, are essentially the same as those in G.S. 62-121.7 (16). See *Interstate Commerce Commission v. Tank Car Oil Corporation* (U.S.C.A. 5th Cir.), 151 F 2d 834, and *Allaman v. Pennsylvania Public Utility Commission*, 149 Pa. Supr. 353, 27 A 2d 516.

In our opinion, the plaintiff during the years involved in this action was not a contract carrier within the meaning of our statutes. It never engaged in the business of transporting the goods of another for com-

pensation. Neither the plaintiff nor its lessee ever carried a single piece of merchandise in intrastate commerce in North Carolina for another for compensation. Curtiss Candy Company transported its own merchandise exclusively in connection with its established business, which business was unrelated to the transportation of property for compensation. On the other hand, the plaintiff did not engage in the transportation of goods for any purpose, it only leased its trucks to the Curtiss Candy Company for the limited purpose of transporting its goods only. Moreover, there is nothing in the leases under consideration that authorized the lessee to transport the good of another for compensation.

In the case of *People v. Hertz Driveurself Stations, Inc.,* 338 Mich. 139, 61 N.W. 2d 113, the defendant was charged with the violation of the Michigan Criminal Code in that it had leased and permitted the use of vehicles registered in its name without having first obtained a "contract carrier" permit, as required by the Michigan statute. It appeared that at least one vehicle of the defendant had been leased to a Produce Company under a long term lease; that the vehicle was operated by the lessee, carrying only the goods of the lessee; that the vehicle was maintained, insured and serviced by the lessor; that the driver of the vehicle was employed and paid by the lessee; and that the driver received all instructions from the lessee. The Michigan statute under which defendant was charged made it unlawful for a "contract motor carrier of * * * property to operate any motor vehicle for the transportation of * * * property for hire" without first having obtained a permit to do so. In holding the defendant not guilty, the Court said: "Hertz neither transported passengers nor property for hire: it simply leased its trucks." *Bridge Auto Renting Corporation v. Pedrick,* (U.S.C.A. 2d Cir.), 174 F 2d 733.

In *Interstate Commerce Commission v. Tank Car Oil Corporation, supra,* the defendant: (a) was the owner of property transported; (b) was transporting it for sale; and (c) was transporting it in furtherance of its commercial enterprise as a dealer at wholesale and retail in the products which it transported. The Court said: "We agree with the contention of the Commission that the ownership of property is not necessarily controlling in determining whether the transportation by such owner constitutes carriage for hire or private carriage. * * * We think that Congress not only intended to say, but said, that if a person, in good faith, transports his own property for the purpose of sale or in furtherance of his own commercial enterprise he is a private carrier and, therefore, is not subject to the provisions of the Act."

In *Michigan Public Utilities Com. v. Duke,* 226 U.S. 570, 69 L. Ed. 445, 36 A.L.R. 1105, the Court said: " * * * it is beyond the power

of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation * * *." 37 Am. Jur., Motor Transportation section 23, page 536, et seq.

In light of the facts disclosed on the record before us, it is our opinion, and we hold, that the rent paid by the Curtiss Candy Company to the plaintiff did not constitute the plaintiff a carrier of any kind within the meaning of our statutes. Moreover, if the Curtiss Candy Company was only a private carrier—and in our opinion it was that, and that only—it would be untenable to hold that the lessor of the trucks used by the Curtiss Candy Company in its capacity as a private carrier was a contract carrier for compensation.

Moreover, we think there is merit in the contention of the appellant with respect to Chapter 831 of the Session Laws of 1953. While it is true that paragraph (g) hereinabove referred to, was set out for the first time among the list of exemptions, it is also true that the Act in its caption spells out the intent and purpose of the Act, which was to "rewrite the definition of owner of motor vehicles and contract carrier vehicles so as to clarify the licensing procedure for leased vehicles." To clarify does not mean to add, or to take from, but, according to Webster's New International Dictionary (2nd Edition), it means, "to make clear."

Whenever the meaning of a statute is in doubt, reference may be had to the title and context as to legislative declarations of the purpose of the Act. *Dyer v. Dyer*, 212 N.C. 620, 194 S.E. 278; *S. v. Keller*, 214 N.C. 447, 199 S.E. 620; *Smith v. Davis*, 228 N.C. 172, 45 S.E. 2d 51, 174 A.L.R. 643; *In re Hickerson*, 235 N.C. 716, 71 S.E. 2d 129. Even so, in our opinion, the levy of the additional assessment which the plaintiff seeks to recover was levied without statutory authority. Hence, the judgment of the court below is

Reversed.

RODMAN, J., took no part in the consideration or decision of this case.